UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| WAYNE WILKERSON,<br><br>    Plaintiff,<br><br>    v.<br><br>MIAMI CORRECTIONAL FACILITY,<br><br>    Defendant. | CAUSE NO.: 3:22-CV-421-RLM-MGG |

OPINION AND ORDER

Wayne Wilkerson, a prisoner without a lawyer, filed a complaint under 42 U.S.C. § 1983. The court must review the complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Because Mr. Wilkerson is proceeding without counsel, the court must give his allegations liberal construction. Erickson v. Pardus, 551 U.S. 89, 94 (2007).

All of the pertinent events happened in 2022. Mr. Wilkerson is incarcerated at Miami Correctional Facility. He alleges that he was sexually assaulted twice by other inmates between February and April. He alleges that he was moved to the "LHU"

dormitory on February 10, and requested protective custody that same day because he "was being extorted and threatened with physical violence." His request was denied. He doesn't say who he made the request to, what information he conveyed, or who denied it. He spoke with his mother by phone about the issue, and she allegedly called the facility twice to request help for Mr. Wilkerson. Mr. Wilkerson doesn't say whom she spoke with. On February 13, two inmates approached Mr. Wilkerson and told him that if he "wanted to stay on the dorm" he would have to perform oral sex on them. He refused, but they held a knife to his throat and forced him to perform oral sex on both of them. Mr. Wilkerson later reported the assault to an unknown staff member and was taken to an outside hospital for evaluation and treatment. He returned to the facility on February 15.

Upon his return, he spoke with "DII Johnson" and was immediately placed in protective custody. About a month later, he spoke with DII Johnson again and pointed out the two inmates who had attacked him. He states that DII Johnson's demeanor suggested to him that the officer didn't care about the attack because Mr. Wilkerson is a sex offender. DII Johnson did tell him during this conversation that he wouldn't be placed back in general population. The following day, an unidentified staff member or members tried to put him back in general population, but he cut his wrists so that he could be placed on suicide watch. He filled out another protective custody request while he was on suicide watch but an unidentified staff member denied it. Mr. Wilkerson claims that he spoke with a case manager named Owens and a correctional

2

officer, Sergeant Kirby, and they "attempted to help but were unable to assist due to negligence of the facility."

Mr. Wilkerson claims he was ultimately moved to general population in the "NHU" dormitory and another inmate raped him on April 14, 2022. He claims the inmate approached him and told him, "I know you're gay and what you're in for—meaning me being a sex offender." The inmate told him if he wanted to stay in that dormitory he had to "be [his] bitch," which Mr. Wilkerson took to mean he had to perform sex acts with this inmate whenever the inmate wanted, or he the inmate and his friends would beat him. Afraid for his safety, Mr. Wilkerson performed oral sex on this inmate. He reported the event to Lieutenant Sowards (first name unknown), who called the Prison Rape Elimination Act compliance manager, who in turn had him sent to an outside hospital for evaluation and treatment. He was "immediately placed on protective custody" upon his return to the facility, where he remains to date. Based on these events, he sues Miami Correctional Facility, seeking monetary damages for pain and suffering.

The Eighth Amendment imposes a duty on prison officials "to take reasonable measures to guarantee the safety of inmates" and to "protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 832-833 (1994). "[P]risons are dangerous places," as "[i]nmates get there by violent acts, and many prisoners have a propensity to commit more," Grieveson v. Anderson, 538 F.3d 763, 777 (7th Cir. 2008, so a failure-to-protect claim can't be based "merely on knowledge of general risks of violence in a detention facility." Brown v. Budz, 398 F.3d 904, 913

3

(7th Cir. 2005). "[T]he fact that an inmate sought and was denied protective custody is not dispositive of the fact that prison officials were therefore deliberately indifferent to his safety." Lewis v. Richards, 107 F.3d 549, 553 (7th Cir. 1997). The plaintiff must establish that "the defendant had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." Santiago v. Wells, 599 F.3d 749, 756 (7th Cir. 2010). This is a high standard.

> To establish deliberate indifference on the part of the defendants sued individually, [plaintiff] needed to show that the officers acted with the equivalent of criminal recklessness, in this context meaning they were actually aware of a substantial harm to [plaintiff's] health or safety, yet failed to take appropriate steps to protect him from the specific danger. [Plaintiff] testified during his deposition that he told officers twice . . . that he was afraid for his life and he wanted to be transferred off the tier. . . . This lack of specificity falls below the required notice an officer must have for liability to attach for deliberate indifference.

Klebanowski v. Sheahan, 540 F.3d 633, 639-640 (7th Cir. 2008) (internal citations and footnote omitted). "[N]egligence, gross negligence, or even recklessness as the term is used in tort cases is not enough" to establish an Eighth Amendment violation. Hildreth v. Butler, 960 F.3d 420, 425–26 (7th Cir. 2020). Nor does making a "mistake" or exercising "poor judgment" satisfy the deliberate indifference standard. Giles v. Tobeck, 895 F.3d 510, 514 (7th Cir. 2018). The plaintiff must allege acts or omissions by the defendant that "cross the line from negligently enabling the attack to recklessly condoning it." *Id.*

Mr. Wilkerson's allegations are disturbing, but he doesn't plausibly allege that any individual staff member at the prison had actual knowledge of a specific risk to

his safety and consciously disregarded that risk. *Id*. at 640. The only defendant Mr. Wilkerson names is the prison itself, but this is a building, not a "person" that can be sued for constitutional violations under 42 U.S.C. § 1983. Smith v. Knox County Jail, 666 F.3d 1037, 1040 (7th Cir. 2012). Although he says he requested protective custody twice during these events, this alone does not establish a constitutional violation. Lewis v. Richards, 107 F.3d at 553. He does not identify who he made the request to, what information he conveyed, and what response he was given. Without such information, the court cannot plausibly infer that any individual staff member was deliberately indifferent to his safety. *See* Klebanowski v. Sheahan, 540 F.3d at 639-40.

    Mr. Wilkerson mentions certain staff members by name in the narrative section of his complaint, but he makes clear that these individuals tried to help him. Although he felt DII Johnson's demeanor toward him was uncaring, he alleges that DII Johnson had him placed in him protective custody and told him that he wouldn't be put back in general population. He says that Mr. Owens and Sergeant Kirby both tried to assist him but were unsuccessful for reasons he does not explain. It is also evident from his allegations that he was moved from one dormitory to another after the first attack, and the second attack appears to have been committed by an inmate wholly unrelated to the first attack. It might have been "poor judgment" to simply move him to another dormitory without placing him in protective custody, but poor judgment does not violate the Eighth Amendment. Lewis v. Richards, 107 F.3d at 554 ("[S]ubsequent events proved at best that the defendants exercised poor judgment in

5

simply choosing to send [plaintiff] to a different dormitory. Exercising poor judgment, however, falls short of meeting the standard of consciously disregarding a known risk to his safety."). Mr. Wilkerson hasn't alleged a plausible Eighth Amendment claim against a proper defendant.

In the interest of justice, the court will give Mr. Wilkerson a chance to file an amended complaint if, after reviewing the court's order, he believes that he can state a plausible constitutional claim based on these events, consistent with the allegations he has already made. *See* Abu-Shawish v. United States, 898 F.3d 726, 738 (7th Cir. 2018); Luevano v. Wal-Mart, 722 F.3d 1014, 1024 (7th Cir. 2013).

For these reasons, the court:

(1) GRANTS the plaintiff until **September 12, 2022**, to file an amended complaint as outlined in this opinion; and

(2) CAUTIONS him that if he doesn't respond by September 12, this case is subject to dismissal under 28 U.S.C. § 1915A because the current complaint does not state a claim upon which relief can be granted.

SO ORDERED on August 15, 2022

                                                s/ Robert L. Miller, Jr.
                                                JUDGE
                                                UNITED STATES DISTRICT COURT